NOT DESIGNATED FOR PUBLICATION

No. 116,588

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAIME MICHELLE CARTER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GUNNAR A. SUNDBY, judge. Opinion filed January 12, 2018. Affirmed.

*Christina M. Kerls*, of Kansas Appellate Defender Office, for appellant.

*Christopher R. Scott*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., BRUNS, J., and STUTZMAN, S.J.

PER CURIAM: Jamie M. Carter appeals the district court's denial of her motion to withdraw her guilty pleas, the court's denial of her motion to continue sentencing and order a competency evaluation, and the court's imposition of an upward durational departure sentence. We find no error in the district court's actions and affirm.

1

FACTS AND PROCEDURAL BACKGROUND

The facts in this case are tragic but they are not complex and are not challenged in this appeal. The procedural history, however, is extensive and relevant and must be laid out in some detail.

In the early evening of May 25, 2014, Carter was involved in a collision in Leavenworth County. Her eastbound sedan crossed the road's centerline and struck a motorcycle driven by Kristopher Steuber. Steuber's wife, Mary Annette Steuber, was a passenger on the motorcycle. Mary Steuber was pronounced dead at the scene; Kristopher Steuber sustained critical injuries but survived. Carter was uninjured in the accident. After failing several police-directed field sobriety tests, Carter was transported to a hospital where a blood draw was taken. Subsequent test results established that Carter's blood tested positive for methamphetamine, amphetamine, and various other drugs.

As a result of the accident, Carter was charged in Leavenworth District Court in July 2014 with one count of involuntary manslaughter while driving under the influence of alcohol or drugs, aggravated battery while driving under the influence of alcohol or drugs, and driving with a suspended license. Carter initially retained counsel, but that attorney withdrew and, upon Carter's application, the district court appointed counsel to represent her.

In January 2015, after the preliminary hearing, the State filed a motion seeking an upward durational departure sentence under the procedure prescribed in K.S.A. 2014 Supp. 21-6817(b). As the bases for the motion, the State alleged Carter's actions evidenced "extreme indifference" to human life and the safety of others, her actions were senseless and random, she was not amenable to probation and posed a future threat, and the degree of harm was greater than typical for the offense. The State relied on Carter's

2

positive drug test result for methamphetamine as well as four other drugs for which she had a prescription. All of the prescribed medications bore prominent labels cautioning against driving while taking the medication. The State also cited the fact that Carter, after the accident, made no attempt to render aid to the Steubers. The State subsequently filed proposed jury instructions, including instructions to be used for the upward durational departure part of the proceeding if Carter were found guilty.

In early March 2015, defense counsel filed a motion to determine Carter's competency to stand trial. Carter failed to appear at the hearing on the motion, which resulted in the court revoking her pretrial bond. Just over a month after the defendant's motion, the court ordered an evaluation to determine Carter's competency and directed the Guidance Center in Leavenworth to examine her and provide a written report.

The Guidance Center evaluation found Carter was competent to stand trial. Defense counsel first requested an evidentiary hearing on competency, then filed motions to continue the competency hearing and trial in order to permit a further evaluation of Carter in late May 2015 by an evaluator she selected. The court granted the motions, took the trial out of its setting, suspended further proceedings pending a competency determination, and set a new date for a competency hearing.

On June 10, 2015, the date for the rescheduled competency hearing, Carter withdrew her motion to determine competency, waived her right to a trial, and pled guilty to the original charges. During the hearing, defense counsel reported she had received the second evaluation, which found Carter was competent to stand trial, and moved to withdraw her motion for a competency determination by the court.

Defense counsel also reported receipt of another expert's report, this one on the vehicle Carter was driving at the time of the accident. Although Carter had expected a mechanical problem would be found, the examination of her vehicle found none. Counsel

3

told the court Carter did not want to put the victims' family through additional trauma, so she wanted to withdraw her not guilty pleas. The court explained to Carter the constitutional rights she would give up by pleading guilty and the method by which the sentencing guideline grid would determine the sentences for the felony convictions using the severity level of the crimes and her criminal history. During the colloquy, the court directly asked the State if it intended to introduce evidence other than the evidence presented at the preliminary hearing and other hearings. The prosecutor replied: "No, Judge." After hearing all these questions from the district judge, Carter pled guilty to all three counts.

Immediately after accepting the guilty pleas, the court looked for a date for the sentencing hearing. As the court did that, the prosecutor reminded the court it had filed a motion for an upward durational departure. The prosecutor stated that after speaking with the victim and his family, the State still intended to pursue that motion and reminded the court that Carter had a right to have the aggravating factors presented to a jury. The State advised the court that jury selection for the departure should be brief as he had talked to defense counsel and they agreed they could stipulate to many of the facts for sentencing purposes.

The court explained to defense counsel that the jury would only be used to determine whether the aggravating factors were proven beyond a reasonable doubt. Defense counsel agreed to the proposed sentencing date of August 6, 2015, and told the court that she would be filing a departure motion as well. Defense counsel did not object to the State's discussion of the departure motion, and Carter remained silent after entering her guilty pleas, even while the departure motions were being discussed. At the conclusion of this hearing, the court set a pretrial conference on sentencing issues for July 17, 2015, and a departure sentence proceeding before a jury for August 6, 2015.

4

The State later filed a list of proposed stipulations to narrow the jury's issues for the departure sentence proceeding, and on the day of the pretrial conference, Carter's attorney filed a response that agreed with many of the State's proposed stipulations. On the same date, however, Carter also signed a formal written waiver of her right to conduct the departure sentence hearing before a jury, which Carter's counsel announced to the court at the pretrial hearing.

In light of Carter's declared intent to waive the jury proceeding, the prosecutor asked the court for time to talk with the victims about continuing with a jury. The court expressed uncertainty about the State's entitlement to present the issue to a jury if Carter waived her right to that procedure, but it gave counsel leave to look into the statutes to resolve the issue. During the hearing, defense counsel again told the court that Carter would be filing a departure motion, once she received needed medical records and related information. She also stated Carter would be filing a response to the State's departure motion.

Within a week, the State filed a response to Carter's waiver, agreeing that Kansas statutes allowed Carter to waive her right to have a jury decide a departure sentence proceeding. Nevertheless, the State objected to the waiver on the basis that Carter offered to waive a jury in deference to the victims' feelings and the victims wanted a jury to decide the issue.

Less than a week after the State's objection to her waiver, Carter filed a "Motion for Sentencing in Accordance with Law." In this motion, Carter recited that without any plea agreement she had withdrawn her not guilty pleas, pled guilty as charged to each count, and later waived her right to have a jury trial at sentencing. Carter argued that since she gave up her right to a jury trial and pled guilty as charged, K.S.A. 2015 Supp. 21-6817 granted no authority to impose an upward departure sentence, with or without a jury.

The parties continued that argument when they reconvened before the court on July 31, 2015. Carter claimed that under K.S.A. 2015 Supp. 21-6817, once a defendant has pled guilty or no contest, any kind of upward durational departure is barred. The State contended that precluding the possibility of an upward durational departure sentence because a defendant has pled to the charges in the case would be clear error. The court took the matter under advisement and committed to rule on that issue prior to the departure sentence setting before the jury the following week.

As promised, the court gathered the parties prior to the scheduled jury proceedings to rule on the question of the State's ability to seek an upward departure. The court interpreted the applicable statutes and held that a guilty or no contest plea did not block the State's pursuit of an upward departure motion. And, if the defendant waived her right to a jury determination of aggravating factors, the departure factors had to be decided by the court. The court also held the State did not have a right to a jury proceeding if the defendant knowingly and voluntarily waived a jury for the departure hearing. Finally, despite Carter's previously submitted written waiver, the court found that waiver was not knowingly made because the court had not specifically advised her of all the rights she would be waiving with respect to the sentencing factors. At that point, Carter's counsel asked for additional time and said she anticipated filing a motion to withdraw Carter's pleas. In the absence of a valid waiver, the court decided to go forward with the hearing on the aggravating factors before a jury but scheduled a time to consider Carter's anticipated motion to withdraw her pleas.

On August 5, 2015, Carter filed a motion to withdraw her pleas. In her motion, Carter asserted her pleas were not voluntarily, knowingly, and intentionally made because during the plea hearing she was told by the court that her sentence would depend solely on the severity level of the crime and her criminal history score. In addition, she noted that during the plea colloquy with Carter, when the district judge said he was the judge who heard the preliminary hearing and asked the State whether the State intended

6

to present further facts, the State told the court it had no further evidence to present on the facts of the case. She argued that prior to her guilty plea, she had not been advised by the State or the court of the potential increase of the sentence through a durational departure. Counsel asserted that although the upward departure motion had been on file for months, many issues had been discussed with Carter and her understanding of the complex issues was unclear. Carter also claimed "the State placed enormous pressure . . . to enter 'guilty' pleas if she in fact took full responsibility for her actions." In addition, the motion stated Carter was made aware that the State was discussing amending the complaint to upgrade the involuntary manslaughter charge to second-degree murder and had only 10 minutes to decide how to proceed that day.

After hearing from counsel at the hearing that same day, the district court denied Carter's motion to withdraw her guilty pleas. The court relied on its own observations and a review of the record and the digital audio recording of the plea hearing to find Carter voluntarily, knowingly, and intelligently entered guilty pleas to the charges and that she was not misled or unfairly taken advantage of during the proceeding. The court, however, granted Carter's renewed motion for a competency determination and ordered her to be committed to the Larned State Hospital (LSH) for examination.

Carter was evaluated at LHS and discharged on September 3, 2015. The LSH evaluator issued a report on November 12, 2015, diagnosing Carter with antisocial personality disorder, bipolar disorder, posttraumatic stress disorder, and various substance abuse disorders. However, based on the entire evaluation, the opinion reported that Carter understood the charges and potential penalties she faced, had an adequate understanding of the roles of the participants, and was able to assist and cooperate with her attorney.

On December 18, 2015, the district court took up the evaluation from LSH and the question of competency. The court found Carter was competent to proceed with

sentencing and granted defense counsel's motion for Carter's return to LSH for assessment under K.S.A. 2015 Supp. 22-3429 as part of the presentence investigation.

An LSH notice in the record shows Carter was admitted to LSH on February 9, 2016, and discharged on April 21, 2016. On May 11, 2016, the parties appeared again and the court entered a finding that Carter knowingly and voluntarily waived her right to a jury on the existence of aggravating sentencing factors. The court set June 16, 2016, as the sentencing date.

The day before the scheduled sentencing, defense counsel filed a motion to continue, combined with a request that the court authorize additional funds for a further competency evaluation by a defense psychologist. Counsel asserted she had been unable to communicate with Carter because of Carter's apparent drugged state resulting from the medications prescribed for her by LSH when she was discharged. Counsel reported that Carter was incoherent, drooling, and unable to assist in preparing for the sentencing hearing. The motion further claimed that two days prior to filing the motion, jail officials reported to counsel that Carter had been engaging in "bizarre behaviors" such as stripping off her clothes and talking to people who were not there, and the day before the motion was filed jail staff reported they could not persuade Carter to put on her clothes for a visit with her attorney despite trying for over an hour.

The court convened the sentencing hearing as previously scheduled on June 16, 2016. Defense counsel argued Carter was now overmedicated, although she was receiving the medication prescribed during the most recent LSH stay. Counsel described the various times she tried to talk with Carter about her sentence and had been unable to do so and how she wanted to be able to put Carter on the stand but could not do it because she had been unable to communicate with her. She told the court that just that morning she was unable to communicate with Carter so she could understand her choices and afterward was only able to say Carter wanted a shorter sentence than the State was

8

requesting. She told the court: "She has never been like this since I've known her for the past year and a half or two years." Counsel asked the district court to authorize funds for an evaluation of Carter's medications and an assessment of her competency to proceed with sentencing.

The court denied the motion to continue, commenting that Carter seemed to understand the basic principles of the day's proceeding in that she understood she was there for sentencing and she wanted the court to order less time than the State wanted. Carter had off-the-record discussions with her attorney about her criminal history before responding to the court's basic questions. Counsel then told the court she was unprepared for sentencing since she had been unable to discuss with Carter the possible existence of mitigating factors that should be argued on her behalf. If the court decided to proceed, counsel said she would be left simply arguing for a guideline sentence.

Kristopher Steuber, the surviving victim of the crash, addressed the court on the impact of the accident on his life and his family. He also spoke about the impact on them from more than two years having passed since the date of that wreck.

After a 10-minute recess with Carter, defense counsel argued that the guideline sentence was appropriate punishment in this case. Counsel asserted that Carter was aware of the pain she had caused and that she had written a letter to the Steuber family, but it had been lost in her many transfers between facilities. Counsel did read into the record her transcription of a written statement Carter had given her early in the process about what happened the day of the accident, along with a letter from Carter's brother that described her history as a victim of sexual violence, abusive relationships, mental illness, and drug addiction. The statements said on the day of the wreck Carter had again been abused by her husband, had packed her things in his car, and had left him. Carter had written she did not remember the accident and believed she was in shock after the accident as she did not realize that anyone was seriously hurt. Carter wrote that after the

9

accident she thought there had been something mechanically wrong with the car, but when she received confirmation the accident was not the result of a recent repair, she knew she was responsible. She had written there were no words to express her guilt, regret, and sorrow.

Defense counsel read a similar letter from Carter's mother, and Carter's sister also spoke on her behalf, commenting that she agreed with the characterization of Carter's condition then as "zombie-like." Finally, defense counsel submitted voluminous reports from her probation office in Johnson County as well as medical records from before and after the accident. Defense counsel also presented argument in response to the aggravating factors alleged by the State. Carter then declined the court's invitation to offer further comments of her own.

After a recess, the court first addressed Carter's motion to continue the sentencing for further professional evaluation. The court referred in detail to the opinions expressed in Carter's most recent LSH report and commented on the court's own observation of Carter's appropriate emotional responses to the victim's statement and her family members' statements in her support, as well as the fact that she spoke with her attorney at times during the hearing and pointed out to her counsel she had completed service of a sentence in Johnson County. The court also commented on the fact Carter had told her attorney she wanted less time on her sentence than the State was asking, that she had responded appropriately to the questions the court asked her, and she was "interactive and responsive" rather than "stoic" as the hearing proceeded.

On the basis of those findings, the court concluded Carter was "still capable of maintaining a consistent defense," was able to listen and "inform her lawyer[] of distortions or misstatements," was "able to make simple decisions" about her alternatives, and chose not to speak when given the chance. As a result, the district court found Carter continued to be competent "for this particular hearing" and specifically denied the motion

10

to continue for further evaluation. The court then added a finding that Carter's inability to discuss mitigating factors had not hampered the presentation on her behalf and specifically noted her counsel's arguments against the State's alleged aggravating factors, the presentation of Carter's account of the day of the accident, and the statements from family on Carter's behalf.

After reviewing the presentence investigation report, the district court imposed the aggravated presumptive sentence for involuntary manslaughter while under the influence of drugs, then discussed the State's motion for departure. The court specifically rejected the State's allegations that Carter's actions amounted to extreme indifference to human life in this case, as well as the State's claims that Carter's actions were senseless and random acts against the victims and that the harm was greater than the typical harm for the statutory crime. The court did find, however, that Carter's combined choices of driving while her license was suspended, taking methamphetamine while on probation, refusing or failing the drug treatment program, and choosing to drive after consuming methamphetamine constituted an aggravating factor. By calculating the double of the standard sentence for the involuntary manslaughter charge, the court imposed an 80-month sentence on that charge. The court then imposed the standard 32-month presumptive sentence for the aggravated battery, to be served consecutively, and a concurrent 6 months in jail for driving while suspended, resulting in a controlling prison term of 112 months.

Carter timely appealed. The day she filed her notice of appeal, Carter also filed a motion to set aside the sentencing and for an evaluation before conducting resentencing. Counsel reiterated her prior claims that Carter was incompetent and argued that Carter had been unable to speak coherently with counsel before or during sentencing and was unable to testify at sentencing or to speak on her own behalf. After considering the numerous psychological evaluations given to Carter and the court's recollection of her behavior during the hearing, the district court found there was insufficient evidence to

11

establish Carter was incompetent at the time of the sentencing hearing and denied the motion. Carter filed no further appeal from the denial of her motion.

ANALYSIS

From the considerable procedural history, Carter distills three issues. They are the district court's denial of her motion to withdraw plea, the denial of the motion to continue sentencing for further evaluation, and the imposition of an upward durational departure sentence.

*Denial of motion to withdraw plea*

Carter contends the district court erred in denying her motion to withdraw her guilty pleas. Her motion in the district court and her brief on appeal assert two reasons that her pleas were not knowingly and voluntarily made: (1) she was not informed the State could or would still pursue its motion for an upward durational departure sentence if she pled guilty; and (2) she was coerced into pleading guilty because the State had mentioned to her attorney that there might be grounds to amend the original involuntary manslaughter charge to a charge of second-degree murder. Carter asserts either or both of these reasons established "good cause" to permit her to withdraw her guilty pleas.

*Standard of review*

Our Supreme Court recently reviewed the standards that apply to appellate consideration of Carter's issue:

"K.S.A. 2016 Supp. 22-3210(d)(1) addresses the standard for allowing the withdrawal of a . . . plea before sentencing. It states: 'A plea of guilty or nolo contendere, for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged.' Accordingly, appellate courts review a district court's

12

decision to deny a presentence motion to withdraw a plea, including the underlying conclusion that the defendant has not established good cause, for an abuse of discretion. *Edgar*, 281 Kan. at 38. This generally means that the district court's 'decision is protected if reasonable persons could differ upon the propriety of the decision as long as the discretionary decision is made within and takes into account the applicable legal standards.' *Edgar*, 281 Kan. at 38; see *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011). Applying an abuse of discretion standard does not involve reweighing evidence or assessing witness credibility; we defer to district court fact finding in these matters. *State v. Anderson*, 291 Kan. 849, 855, 249 P.3d 425 (2011)." *State v. Reu-El*, 306 Kan. 460, 472, 394 P.3d 884 (2017).

In her appeal, Carter does not contend the district court applied the wrong legal standard. She essentially concedes that and the record shows the district court applied the correct standard. When considering Carter's motion, the district court's discussion encompassed the "*Edgar* factors" by evaluating whether "'(1) the defendant was represented by competent counsel, (2) the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and (3) the plea was fairly and understandingly made.' [Citations omitted.]" *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). A district court may also consider other relevant factors when deciding the motion. See *State v. Aguilar*, 290 Kan. 506, 512-13, 231 P.3d 563 (2010) (while the *Edgar* factors are viable benchmarks for judicial discretion, those factors should not be mechanically applied). In this case, Carter's arguments fall primarily within the scope of the second and third Edgar factors.

*Were Carter's pleas knowingly and understandingly made?*

Carter filed the motion to withdraw her pleas almost two months after she offered the pleas and the district court accepted them. She argues now that her guilty pleas were not "knowingly and understandingly" made because the district judge did not explain that her pleas would not keep the State from pursuing its motion for an upward durational departure sentence. Carter emphasizes that during her plea colloquy, the court only

advised her of the possible sentencing ranges she faced based upon the severity level of her offenses—including 38 to 172 months for the involuntary manslaughter charge—and specifically advised her that the sentence would be based only on two factors: the severity level of the crime and her criminal history. Carter also points out that when the court considered the factual basis for the pleas, the prosecutor advised the court that the factual basis was established at the preliminary hearing and other prior hearings and the State did not intend to "introduce any other evidence relative to the facts of the case."

Carter correctly notes that during the plea colloquy neither the court nor counsel mentioned the potential for a sentence longer than the presumed standard guideline sentence. When considering good cause to withdraw the pleas, however, that omission must be considered in context. The State filed its motion stating the intent to seek an upward departure in January 2015, a timely filing in advance of Carter's original March 2015 trial date. That motion was never withdrawn. In addition, during the plea hearing, immediately following the court's acceptance of the guilty pleas, the court began looking for a sentencing date. The prosecutor interjected a reminder that the State had filed a motion for upward departure and intended to argue for that at sentencing, which would trigger Carter's right to have the alleged aggravating facts presented to a jury. At no time during that discussion did defense counsel object to the State's continued intent to seek an upward departure, nor did Carter herself raise any question, express any confusion, or make known either directly or through her counsel that she thought the discussion was inconsistent with her understanding about what would happen if she pled guilty.

In fact, at the next status conference, Carter's counsel presented a written waiver signed by Carter, dated five weeks after the plea hearing, forgoing Carter's right to have a jury consider the aggravating factors and consenting to the upward departure motion being considered by the district judge. Carter's counsel also advised the court she would likely be filing her own departure motion and would file a written response to the State's motion. During that intervening period immediately following the plea hearing, therefore,

14

neither Carter nor her attorney suggested by any means that Carter had entered her pleas with the understanding that the State's departure motion was being abandoned.

It was only after an early July status conference—when the State argued that it was entitled to a jury trial on the aggravating factors even if Carter waived her right to the sentencing jury—that any question was raised about the State's ability to seek an upward departure sentence. The court ordered the parties to research the issue. Thereafter, Carter filed her July 28, 2015 motion for "sentencing in accordance with law." In that motion, relying on *State v. Horn*, 291 Kan. 1, 238 P.3d 238 (2010), she argued that her guilty plea without the benefit of a plea agreement precluded any attempt by the State to seek an upward departure.

As discussed below, however, the statutory twists that prevented an upward durational departure in *Horn* were addressed in a 2011 statutory amendment. Only after the court rejected her argument did Carter file a motion to withdraw her pleas claiming they were not knowingly and voluntarily made.

Carter contends neither the court nor her attorney explained to her that an upward departure was still a possibility after her pleas. The district court's omission is a matter of record. Nothing in the record, however, supports Carter's assertion that her trial attorney either did or did not discuss that with her. Since her attorney later argued the wording of the statute prevented the State from proceeding on its motion, Carter asks us to conclude her trial attorney did not explain to her the continuing possibility of an upward departure. If that leap in reasoning was warranted, it seems unlikely that after the pleas were accepted Carter's trial counsel would have engaged in a discussion about scheduling the departure motion rather than assert her belief that further consideration of the State's motion was legally blocked by the pleas. The furthest Carter's trial counsel actually went was a conjecture that Carter "might" have been under the impression that because she

15

was pleading guilty to every charge in order to reduce the family's pain, that she would be sentenced according to the grid.

The record documents the hearings in which defense counsel, the prosecutor, and the court discussed the matters of the jury—or waiver of a jury—for the departure hearing and the timing for sentencing. Neither defense counsel nor Carter asserted the pleas were invalid because they had been based on a significant misunderstanding about the continuing viability of the State's departure motion. At one hearing, defense counsel presented Carter's written waiver of a jury for the departure proceeding. When the State insisted it could have a jury determination even against Carter's wishes, the court asked the parties to brief the issue. Again, neither defense counsel nor Carter, individually, questioned the State's right to move forward with its motion. Defense counsel only stated she would be preparing a departure motion as well.

There is no question that during the plea colloquy the district court explained to Carter that her sentence would be a function of crime severity level and criminal history and that the court failed to mention the State's departure motion. In virtually the next breath, however, the topic turned to that motion and neither then, nor at any time between June 10 and August 5, did Carter complain that her pleas were founded on a misapprehension about the court's ability to sentence beyond the presumed standard duration. We find no support for Carter's argument her pleas were made with a belief that the State's motion would be withdrawn or removed from consideration.

*Were Carter's pleas coerced?*

Carter also argues that *after* she made the decision to plead guilty she was coerced into entering her guilty pleas by a statement made by the prosecutor in a one-on-one discussion with her own counsel. The statement was then recounted to Carter by her counsel. Specifically, Carter claims that when her attorney told the prosecutor she would

16

be withdrawing her not guilty pleas, the prosecutor commented that there had been discussion about amending the primary charge to second-degree murder. Carter's coercion claim infers an implicit intent by the State to elevate the charge if Carter did not plead guilty.

During the hearing on Carter's motion to withdraw pleas, her counsel stated Carter made "some rushed decisions before that hearing based on what the State said they would do if she didn't immediately enter her plea and what the plea should be and what the consequences might be if she did not." The motion to withdraw pleas alleged that "[m]inutes prior" to the hearing, after counsel advised the State that Carter would withdraw her not guilty pleas, the prosecutor told counsel Carter should "enter 'guilty' pleas if she in fact took full responsibility for her actions." Carter argued she only had about 10 minutes after her attorney relayed the discussion with the prosecutor to decide whether to continue with the change of pleas she had intended. Counsel alleged in the motion that Carter "*may have thought* her compliance with the pressure from the State that day, together with her expressed intention of not wanting to put the victim and his family through additional grief, would result in a fairer sentence than that previously threatened." (Emphasis added.)

In response, the State emphasized that Carter was not present during the pre-plea discussion between counsel. Further, the prosecutor stated defense counsel initiated the conversation by informing him that Carter would be changing her pleas but asked if there were any possible amendments to some lesser charge Carter could receive. Although he acknowledged saying there appeared to be a basis to amend to a second-degree murder charge, the prosecutor told the court he also told defense counsel he had no intention of doing so, since Carter now was going to change her pleas. The prosecutor told the court the State had been very clear previously there would be no plea negotiations in this case.

17

The district court considered counsels' arguments and, in reaching a decision on Carter's motion, relied on its own observations of Carter during the plea hearing and its review of the record and the digital audio recording of the plea hearing. The court found Carter's pleas were knowingly and voluntarily made and she had not been misled, coerced, mistreated, or unfairly taken advantage of. The court also emphasized that defense counsel was very effective, had advocated strongly on behalf of Carter's interests, and had spent considerable time conferring with Carter throughout the case. From all those considerations, the court found Carter failed to establish good cause and denied her motion to withdraw her guilty pleas. At the close of that hearing, the district court acceded to defense counsel's renewed motion for a further competency determination, directing that further proceedings be suspended during the time needed for Carter to be assessed at LSH.

We review the district court's denial for abuse of discretion. "Judicial discretion can be abused in three ways: (1) if no reasonable person would have taken the view adopted by the trial court; (2) if the judicial action is based on an error of law; or (3) if the judicial action is based on an error of fact." *State v. Mosher*, 299 Kan. 1, 3, 319 P.3d 1253 (2014).

The contentions by Carter's trial counsel that the district court failed to mention the upward departure motion during the plea colloquy and that she "might" have thought her guilty pleas would end the State's effort to enhance her sentence apparently were not persuasive to the district court. Attention shifted to the scheduling and procedure for the departure hearing immediately after Carter's pleas were accepted and returned to that topic at further hearings before she filed her motion to withdraw those pleas. The district court reviewed the *Edgar* factors in the context of the argument and the record and found no good cause to grant Carter's motion. We find the district court's decision is clearly supported by the record. Considering all the circumstances, nothing suggests either misunderstanding or coercion were factors in Carter's changes of plea. The district court

18

applied the correct legal standard to undisputed facts and made a decision to deny withdrawal of pleas that was well within the reasonable scope of its discretion.

*Denial of Carter's motion to continue for further evaluation*

Carter's second issue is her claim that the district court erred in denying her motion to continue the sentencing hearing for further competency evaluation. Carter now contends her trial counsel's representations of her behavior and the second-hand accounts about her behavior at the jail after her April 2016 return from LSH warranted delay for a medication and competency assessment. Carter argues that she was clearly incompetent to assist her attorney in preparing for her sentencing hearing, which included the State's upward departure motion.

Carter characterizes this issue as a question of statutory interpretation, seeking to invoke an unlimited standard of review. The State, on the other hand, claims the district court's decision regarding Carter's competency is reviewed for abuse of discretion.

Procedurally, if a "judge before whom the case is pending finds that there is reason to believe that the defendant is incompetent to stand trial the proceedings shall be suspended and a hearing conducted to determine the competency of the defendant." K.S.A. 2016 Supp. 22-3302(a). A motion for a competency determination may be made by the defense, by the prosecutor, or by the court based on its own observations. K.S.A. 2016 Supp. 22-3302(a). A person is incompetent to stand trial when, "because of mental illness or defect," the person is unable to make or assist in making his or her defense. K.S.A. 22-3301(1). These provisions recognize the principle that trying a criminal defendant who lacks basic mental competence violates due process. *Cooper v. Oklahoma*, 517 U.S. 348, 354, 116 S. Ct. 1373, 134 L. Ed. 2d 498 (1996). As a starting point, a criminal defendant is presumed competent to stand trial. *State v. Cellier*, 263 Kan. 54, 70, 948 P.2d 616 (1997). When a criminal defendant challenges competency, the defendant

19

carries the burden of proof by a preponderance of the evidence. *State v. Barnes*, 293 Kan. 240, 256, 262 P.3d 297 (2011). To carry that burden, the defendant must show that she was unable to understand the court proceedings or to assist counsel with a defense. *Cellier*, 263 Kan. at 70.

Recent cases have applied an abuse of discretion standard when determining whether a district court made the correct decision regarding a defendant's competency to stand trial. *State v. Stewart*, 306 Kan. 237, 251, 393 P.3d 1031 (2017); *State v. Marshall*, 303 Kan. 438, 444, 362 P.3d 587 (2015). The only time a de novo standard has been applied to a competency question is when there is a procedural challenge based on whether the competency hearing complied with the requirements of state statutes and satisfied due process standards. See *State v. Woods*, 301 Kan. 852, 859, 348 P.3d 583 (2015). The abuse of discretion standard also applies to rulings on motions for continuances. *State v. Burnett*, 300 Kan. 419, 436, 329 P.3d 1169 (2014). Carter's issue is a substantive, rather than procedural, competency issue, so the district court's action is reviewed for abuse of discretion.

Although three separate evaluations found Carter suffered from bipolar disorder and other mental health conditions requiring medication, she was consistently determined to be competent to stand trial. These evaluations occurred in the spring of 2015 at the local Guidance Center, in late May 2015 by Robert W. Barnett Ph.D. who was selected by Carter, and in the fall of 2015 at LSH. She was returned to LSH again for assessment as part of the presentence process, and the LSH staff reported to the court that Carter's psychiatric conditions were well-managed with her new medication regime.

Notwithstanding the consistent findings of competency, defense counsel reported difficulties in working with Carter throughout the case. At one point counsel complained that the jail was not providing Carter all her prescribed medications, which made it difficult for counsel to ensure Carter understood the processes. After her last evaluation at

LSH, counsel reported that Carter seemed overmedicated and "zombie-like," unable to assist in discussing the defense to the State's departure sentencing motion. Although counsel gave the court second-hand reports of Carter's actions at the jail, the court did not hear testimony or see documentary evidence of that. On May 11, 2016, about three weeks after Carter was discharged from LSH, she appeared in court with counsel for a brief scheduling hearing. At that time counsel suggested to the court that after returning from LSH Carter was capable of making a decision on waiving a jury for the upward departure proceeding. That may be contrasted with counsel's representation at sentencing that Carter had "obviously" been overmedicated since her return from LSH.

The same district judge presided for the duration of Carter's case, presenting the opportunity to observe her at numerous hearings over a long period, before and after her evaluations. Our statutory competency procedure recognizes a judge's "own knowledge and observation" as a legitimate basis for ordering an evaluation. K.S.A. 2016 Supp. 22-3302(1). At sentencing, the district court heard the proffers from Carter's counsel about her condition. The court commented on the fact that Carter had just been assessed and he had read the report of those professionals. Based on the circumstances as he saw them that day, the district judge decided to proceed with sentencing. We do not reweigh those factors but decide whether that decision was one that no reasonable judge in those circumstances would make. While we certainly can imagine other judges deciding the motion to continue differently, we cannot say that no reasonable judge would make the decision made here. We find no abuse of discretion in denying the continuance.

*Imposition of upward durational departure sentence*

For her third claim of error, Carter renews her argument to the district court that K.S.A. 2016 Supp. 21-6817, the section addressing departure sentencing, does not grant authority to impose an upward durational departure sentence when a defendant has pled guilty. When the issue before us requires interpretation of sentencing statutes, we review

21

it as a question of law subject to a de novo standard. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

Carter acknowledges that the statute, formerly K.S.A. 21-4718, was amended after the *Horn* decision, and states she "does not contest that the 2011 amendment solved the precise problem at issue in *Horn*." She argues, however, that K.S.A. 2016 Supp. 21-6817 simply has no language authorizing an upward durational departure sentence when there has been no trial. In Carter's view, the 2011 amendment had no effect on her reasoning.

The first step in statutory interpretation is that the intent of the legislature must be found in the statutory language adopted, giving common words their ordinary meanings. *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016). If the statutory language is not ambiguous, we do not speculate about the legislative intent behind that clear language and we should refrain from reading something into the statute that is not readily found in its words. *State v. Toliver*, 306 Kan. 146, 150, 392 P.3d 119 (2017).

As in *Horn*, the key provision relating to the upward departure sentencing issue before us is subsection (b)(4) of the statute. See *Horn*, 291 Kan. at 7-8. The statute in effect at the time of Carter's crime contains the same language as the current statute, which states:

"(4) If the court determines it is in the interest of justice, the court shall conduct a separate departure sentence proceeding to determine whether the defendant may be subject to an upward durational departure sentence. Such proceeding shall be conducted by the court before a jury as soon as practicable. If any person who served on the trial jury is unable to serve on the jury for the upward durational departure sentence proceeding, the court shall substitute an alternate juror who has been impaneled for the trial jury. If there are insufficient alternate jurors to replace trial jurors who are unable to serve at the upward durational departure sentence proceeding, the court may conduct such upward durational departure sentence proceeding before a jury which may have 12

22

or less jurors, but at no time less than six jurors. Any decision of an upward durational departure sentence proceeding shall be decided by a unanimous decision of the jury. Jury selection procedures, qualifications of jurors and grounds for exemption or challenge of prospective jurors in criminal trials shall be applicable to the selection of such jury. *The jury at the upward durational departure sentence proceeding may be waived in the manner provided by K.S.A. 22-3403, and amendments thereto, for waiver of a trial jury. If the jury at the upward durational departure sentence proceeding has been waived, the upward durational departure sentence proceeding shall be conducted by the court*." (Emphasis added.) K.S.A. 2016 Supp. 21-6817(b)(4).

The plain language of the amended statute is clear. First, the jury for an upward durational departure sentence may be waived using the same standards for the waiver of a jury trial. Second, if the jury for the sentencing proceeding has been waived, that "proceeding shall be conducted by the court." K.S.A. 2016 Supp. 21-6817(b)(4). In this case, Carter waived her right to a jury trial and pled guilty. Thereafter, Carter presented a written waiver of jury for the upward departure proceeding and Carter and her trial counsel later reaffirmed the waiver at the status hearing between her return from LSH and the sentencing hearing.

Carter further contends that the time requirements in K.S.A. 2016 Supp. 21-6817 for filing motions seeking upward departures support her argument. The relevant part states:

"The county or district attorney shall file such motion to seek an upward durational departure sentence not less than 30 days prior to the date of trial or if the trial date is to take place in less than 30 days then within seven days from the date of the arraignment." K.S.A. 2016 Supp. 21-6817(b)(1).

Carter reasons that the filing dates are only indexed to a trial date and there is no corresponding reference to a case when there is no trial, so the absence of a specific "if the defendant pleads guilty or no contest" provision shows the absence of authority to

23

impose that kind of departure. Carter's conclusion is essentially a non-sequitur, since the timing of the State's filing is plainly designed to give a defendant and the court sufficient notice to prepare for either presenting the aggravating factors to the jury or waiving a jury and presenting them to the court. We see nothing there to suggest that a defendant's guilty or no contest plea *after* a trial date was set—undoubtedly the most common sequence— somehow precludes consideration of a timely filed departure motion.

We find no support whatsoever for Carter's argument that the structure of the statute removes from a district court the ability to consider an otherwise statutorily compliant motion for upward durational departure when a defendant decides to enter a guilty or no contest plea.

*Conclusion*

In our review, we find no abuse of discretion by the district court. Although Carter's arguments might have persuaded a different district judge to rule differently on the questions she raises, that is not our standard for review. We also find no merit in Carter's argument based on her interpretation of the departure statute. As a result, there is no basis for the relief she requests.

Affirmed.